# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**THE UNITED STATES OF AMERICA,**

   **Plaintiff,**       **Case No. 1:19-cr-102**

              **JUDGE DOUGLAS R. COLE**

  **v.**

**TERRY WILLIS,**

   **Defendant.**

## OPINION AND ORDER

This cause comes before the Court on Defendant Terry Willis's Motion to Dismiss (Doc. 49). In the Motion, Willis argues that the government violated his constitutional and statutory speedy trial rights. For the reasons below, the Court **DENIES** the Motion.

## FACTUAL BACKGROUND

Because Willis's Motion raises speedy trial issues, the facts regarding the case's procedural history, rather than those relating to the charged crime, drive the analysis. Accordingly, the Court focuses this background section largely on the former, rather than the latter.

This case began on May 22, 2019, when a Cincinnati Police Department patrol officer attempted to stop a car with no front license plate and heavily tinted windows. Willis, who was driving that car, exited the vehicle and immediately ran away despite the officer's verbal command to stop. The officer eventually detained Willis by using a taser. Searching Willis incident to his arrest, officers on the scene found a loaded

Glock Model 19, 9mm firearm, a bag of crack cocaine, and two bags of marijuana on Willis's person.

On August 28, 2019, the Grand Jury indicted Willis on three charges: (1) possession of controlled substances with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); (2) possession of a firearm in furtherance of a serious drug offense in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). (Indictment, Doc. 1, #1–2). Willis had an initial appearance before Magistrate Judge Stephanie Bowman on September 11, 2019. The next day, September 12, 2019, the Magistrate Judge held a detention hearing and then ordered Willis detained pending trial. During that hearing, Willis pled Not Guilty to all counts. After that, the Court (at that time the matter was assigned to Judge Michael Barrett) issued a Scheduling Order (Doc. 12) setting a motions deadline for October 8, 2019, and a scheduling conference for October 9, 2019.

On October 8, 2019, twenty-six days after Willis was ordered detained, Willis filed the first motion in this case: a Motion to Continue the Status Conference and Extend Filing Deadline (Doc.14). The Court granted that motion the next day by way of a Notation Order, which also specified "Defendant to file waiver." Although that suggested that Willis would be filing a waiver of his speedy trial rights, it does not appear that Willis actually filed such a waiver at that time. In any event, the case was continued, pursuant to Willis's request, until a November 7, 2019, status conference. On that date, Willis's counsel moved for a psychiatric exam so that Willis

could undergo a competency evaluation. (*See* Doc. 15). Eight days later, on November 15, 2019, the Court granted that motion and ordered that Willis be evaluated to determine whether he suffered from a mental disease or defect that rendered him incompetent to stand trial. (11/15/19 Order, Doc. 17).

On January 9, 2020, the case was transferred to the undersigned judge. The docket remained inactive until April 9, 2020, when Willis filed a Motion for Reconsideration (Doc. 21) asking the Court to reevaluate his pretrial detention. There, Willis requested temporary release in light of the COVID-19 pandemic, arguing that incarceration during a pandemic jeopardized his health.

While that Motion was pending, the Court received Willis's first competency report on May 13, 2020. (Forensic Report, Doc. 22). That report opined that Willis was competent. The Court held a competency hearing on June 10, 2020, and neither party objected to the findings in the report. Based on the report, the Court found Willis competent to stand trial. (6/10/20 Minute Entry).

On June 11, 2020, the Court set a status conference for June 12, 2020, to discuss the speedy trial clock and an appropriate calendar for moving the matter to trial. Defense counsel requested a week to discuss the matter with her client. The Court granted the request, and then scheduled a status conference for June 19, 2020. At that status conference, the Court set a trial date for August 18, 2020. The parties also agreed to toll the time through that date to allow defense counsel an opportunity to prepare for trial. Accordingly, the Court issued an Ends of Justice ("EOJ") Order

that tolled the speedy trial clock until that scheduled trial date. (6/19/20 Order, Doc. 24).[1]

The Court then held a follow-up status conference on July 6, 2020. At that conference, Willis's counsel informed the Court that her client needed additional time to consider how to proceed in the matter. She requested an opportunity to confer further with Willis about filing a motion to continue the trial date. Three days later, though, on July 9, 2020, she instead moved to withdraw. The Court held a status conference the next day, on July 10, 2020, regarding that motion. At that status conference, the Court set an ex parte hearing for the motion to withdraw on July 16, 2020.

The same day that the ex parte hearing occurred, the Court granted defense counsel's motion, and also appointed new counsel for Willis. (7/16/20 Order, Doc. 29). The Court then set a status conference for August 10, 2020, to allow new counsel to confer with his client before discussing the current trial calendar. At the August 10 status conference, the Court informed the parties that it was vacating the August 18, 2020, trial date due to General Order 20-23, which required the Court to suspend jury trials in light of the ongoing COVID-19 pandemic. The next day, the Court entered an EOJ Order re-setting the trial for September 8, 2020, and tolling time through that new trial date based on the public health concerns caused by the pandemic.

---

[1] In advance of the competency hearing, the government also filed its opposition to Willis's Motion for Reconsideration of the pretrial detention order. Willis filed a reply supporting his request on June 22, 2020. The Court denied Willis's Motion on July 9, 2020 (while the speedy trial act clock was tolled pursuant to the EOJ Order noted above), meaning that Willis remained detained pending trial.

On August 17, 2020, the United States moved for a *Lafler* Hearing (Doc. 31). Then, on August 20, 2020, Willis filed a Motion to Continue Trial Date (Doc. 35). The Court held a status conference on August 25, 2020, to address those filings. After that conference, the Court entered an Order granting the continuance, setting a new trial date for November 30, 2020, and also setting the government's requested *Lafler* hearing (and the final pretrial conference) for November 12, 2020 (8/26/20 Order, Doc. 36). The Court's Order included an EOJ Order that tolled time through the newly scheduled trial date. (*Id.*).

A few weeks later, Willis elected to change counsel once again, this time retaining private counsel. His new counsel filed a Motion to Substitute Attorney (Doc. 39) on September 14, 2020. The Court granted that motion the next day. Approximately a week later, the Court set the matter for another status conference, at which defense counsel indicated he believed the matter could be resolved without trial. The Court set a follow-up status conference for October 20, 2020, to discuss the issue again after defense counsel had a further opportunity to confer with his client.

On October 19, 2020, Willis's counsel contacted chambers indicating that the parties had reached a plea agreement and requesting that the Court convert the previously scheduled final pretrial conference into a change of plea hearing. The Court did so.

But, three days before that hearing, on November 9, 2020, Willis's third counsel filed a Motion to Withdraw (Doc. 40). This prompted the Court to hold a status conference on November 12, 2020, during which Willis's counsel, whose motion to

withdraw was pending but not yet granted, raised new concerns that his client might not be competent. After discussion, the government informed the Court it intended to move for a competency examination, which it did later that day. (Second Mot. for Competency Hr'g, Doc. 42). The Court granted defense counsel's motion to withdraw that same day (11/20/20 Order, Doc. 43), appointed Willis's fourth counsel (*id.*), and the next day granted the government's Motion for a Second Pretrial Competency Exam as the parties (including Willis's now-former counsel) had discussed (11/13/20 Order, Doc. 44). The Court filed an Amended Order again confirming that relief on November 24, 2020 (Doc. 45). At no time did Willis's new counsel object to that Order (until filing the Motion to Dismiss on speedy trial grounds that is the subject of this Opinion and Order).

The next docket entry occurred on January 14, 2021, when the federal medical center housing Willis requested a 30-day extension to complete Willis's evaluation. (1/14/21 FMC Ltr., Doc. 46). The Court granted that request the same day, but only permitted 15 additional days for completing the mental health evaluation. (1/14/21 Order, Doc. 47). The Court received Willis's Forensic Psychological Report on March 1, 2021. (Second Forensic Report, Doc. 48). That second report, as with the first, concluded that Willis was mentally competent to stand trial. After receiving that report, the Court set a competency hearing on March 29, 2021.

The day of that hearing, Willis moved for a one-week continuance, as he had not had an opportunity to review the competency evaluation. The Court granted that continuance, and entered an EOJ Order covering that time. (3/29/21 Order, Doc. 50).

That same day, though, Willis also moved to dismiss the case (Doc. 49), alleging a violation of his statutory and constitutional rights to a speedy trial. The government opposed that motion, which is now fully briefed and properly before the Court.

## LAW AND ANALYSIS

The right to a speedy trial is a bedrock right that "has its roots at the very foundation of the [American Legal System's] English law heritage." *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). This right is "an important safeguard," designed, in part, to preserve a defendant's liberty and to "prevent undue and oppressive incarceration prior to trial." *United States v. Marion*, 404 U.S. 307, 320 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)); *see also United States v. Loud Hawk*, 474 U.S. 302, 312 (1986) ("[T]he Speedy Trial Clause's core concern is impairment of liberty.").

As to federal criminal defendants, a right to speedy trial arises from two sources—one constitutional and the other statutory. First, the Sixth Amendment instructs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. Then, in 1974, Congress passed the Speedy Trial Act, 18 U.S.C. § 3161, which gave statutory "effect to the [S]ixth [A]mendment right." *Betterman v. Montana*, 136 S. Ct. 1609, 1616 (2016) (quoting *United States v. MacDonald,* 456 U.S. 1, 7 n.7 (1982)). While both provisions address the same underlying issue, there are important differences between the two. The Sixth Amendment speedy trial right, for example, does not limit the government to a definite and specific time period. *See Barker v. Wingo*, 407 U.S. 514, 522 (1972). The

Speedy Trial Act, by contrast, does. The Act provides that a trial shall "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

Here, Willis argues that the government violated both his constitutional and statutory rights to a speedy trial. (Mot. to Dismiss, Doc. 49, #227–34). The Court addresses each claim separately below, concluding he is wrong as to both.

## A. The Government Did Not Violate Willis's Sixth Amendment Speedy Trial Right.

Although the constitutional speedy trial right holds a prominent place in the American legal tradition, how it applies in a particular case is not always cut and dried. Indeed, the Supreme Court refers to the constitutional speedy trial right as "'amorphous,' 'slippery,'" and necessarily dependent on the circumstances of each case. *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker*, 407 U.S. at 522). Reflecting the difficulty in distilling clear-cut rules governing this important right, the Supreme Court has instead adopted a four-factor test to organize and balance the facts that inform the Sixth Amendment speedy trial analysis. Specifically, courts are to consider: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. *Barker*, 407 U.S. at 530. Apart from the first factor, which, as described below, acts as a sort of trigger for consideration of the remaining three, none of the *Barker* factors is "a necessary or sufficient condition to the finding of a deprivation of the

right of speedy trial." *Id.* at 533. Rather, courts must consider each factor as part of a "difficult and sensitive balancing process." *Id.*

Of course, as the analysis turns on the existence of "delay," the first question is when the Sixth Amendment speedy trial clock starts. Thankfully, that question at least has a clear answer. The Supreme Court has explained that the Sixth Amendment's speedy trial right attaches once the defendant is formally "accused." *Marion*, 404 U.S. at 313. That is because the government's accusation is what gives rise to the concerns the speedy trial right is designed to address. Namely, an accusation tends to "seriously interfere with the defendant's liberty," "subject him to public obloquy, and create anxiety in him." *Id.* at 320. "As a general proposition," such accusations arise by arrest or through indictment, and either one will trigger the Sixth Amendment speedy trial right. *Brown v. Romanowski*, 845 F.3d 703, 712–13 (6th Cir. 2017). Moreover, as either can trigger the clock, the one that occurs earlier is the accusation that matters. *Id.* (explaining that the constitutional speedy trial "right usually attaches when the defendant is arrested or indicted, whichever is earlier" (citations omitted)). Here, officers arrested Willis on May 22, 2019, and the Grand Jury indicted him on August 28, 2019. Willis's Sixth Amendment speedy trial right thus attached at the time of his arrest. Accordingly, the Court applies *Barker*'s four-factor inquiry based on that date.

### 1. The Length Of Delay Is Long Enough To Trigger A Speedy Trial Clause Analysis.

If "taken literally," the Speedy Trial Clause "would forbid the government to delay the trial of an 'accused' for any reason at all." *Doggett v. United States*, 505 U.S.

647, 651 (1992). But that clearly cannot be the case. Delay inheres in the judicial process, and *some* delay, for example, to allow for plea negotiations, to give parties time to review discovery, or to permit the defense to contemplate and prepare pretrial motions, benefits both the defendant and the general operation of the justice system. *Barker*, 407 U.S. at 534 (recognizing that "some delay would have been permissible under ordinary circumstances"). After all, the government typically has the opportunity to build its case *before* arrest. So criminal defendants would be ill-served by a regime that forced them to proceed to trial immediately after their arrest. In other words, the typical temporal ebb and flow of criminal proceedings is normal, even helpful, so long as the case is prosecuted with "customary promptness." *Doggett*, 505 U.S. at 652. That said, delay can nonetheless threaten a defendant's speedy trial rights when the "interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* at 651–52 (quoting *Barker*, 407 U.S. at 530–31).

With that in mind, the first *Barker* factor asks the Court to assess whether the delay in a particular case has crossed this "threshold" into the land of the "presumptively prejudicial." *Barker*, 407 U.S. at 530. Absent that, the Court need not even consider the remaining three factors. *Doggett*, 505 U.S. at 652 (holding that defendant must identify delay that "stretches beyond the bare minimum needed to trigger judicial examination of the claim") (citing *Barker*, 407 U.S. at 533–34); *see also Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism.").

Unfortunately, like many other aspects of the analysis, there is little by way of bright-line rules for determining when this threshold is met. Rather, it is a flexible inquiry that is "necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31. For example, both the parties and the court understandably may require a longer time to move to trial in a case involving a complex conspiracy charge than in one involving "ordinary street crime." *Id.* at 531.

Although the exact threshold for what constitutes prejudicial delay is far from clear, not surprisingly "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. And when the "delay approach[es] one year," that is typically considered so "uncommonly long" as to be "presumptively prejudicial" for purposes of the first *Barker* factor. *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005) (citing *Doggett,* 505 U.S. at 652 n.1).

Even so, the "[d]elay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex … charge." *Barker*, 407 U.S. at 530. Here, the parties dispute whether the case against Willis is complex enough to warrant a lengthier delay than the one-year delay that would typically satisfy the first *Barker* factor. The government points to the need for expert testimony in this case—especially as relating to lab results, forensic testing methods for controlled substances, whether the gun and ammunition involved create an interstate nexus, and whether the drugs at issue were intended for trafficking. According to the government, the need for such testimony makes this a complex case. (Resp. in Opp'n, Doc. 52, #267). Willis, on the other hand, argues that a delay of almost two years

between arrest and trial "is beyond presumptively prejudicial." (Mot. to Dismiss, Doc. 49, #232).

The Court observes that the government has not pointed to any specific complexity relating to the guns or drugs Willis allegedly possessed, especially considering that this case involves a single defendant as opposed to a complex multi-defendant case. *Cf. United States v. Baugh*, 605 F. App'x 488, 492 (6th Cir. 2015) ("The sheer size and complexity of this sprawling gang case—featuring ten indictments, numerous defendants, voluminous discovery, over 1,800 pretrial docket entries—accounts for most of its length."). And possessing guns and drugs, absent more, strikes the Court as the type of ordinary street crime that *Barker* contemplates. Thus, the Court agrees with Willis that the delay here weighs in his favor under the first *Barker* factor.

Willis's successful showing on the first *Barker* factor in turn triggers the Court's consideration of the three remaining *Barker* factors: the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant.

### 2. *Most Of The Delay Is Attributable To Willis.*

The second *Barker* factor, the reason for the delay, addresses "whether the government or the criminal defendant is more to blame for the delay." *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003) (quoting *Doggett,* 505 U.S. at 651 (brackets omitted)). On one end of the spectrum are instances where the government has created the delay "to gain some tactical advantage over [defendants] or to harass them." *Barker*, 407 U.S. at 531 n.32 (quoting *Marion*, 404 U.S. at 325). Engaging in

this type of bad-faith conduct "weigh[s] heavily against the government" in a speedy trial analysis. *Schreane*, 331 F.3d at 553. Conversely, though, "delay caused by the defense weighs against the defendant." *Brillon*, 556 U.S. at 90. Such delay counsels against finding that the government violated the defendant's constitutional speedy trial right.

Between these two poles lie instances where the delay is not clearly attributable to the deliberate conduct of either party. But even then, the delay may arise from one party's negligence. And in such cases, that delay will still weigh against the party at fault, albeit less heavily than deliberate delay would have. *Id.* ("More neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered to weigh against the government." (brackets omitted (quoting *Barker*, 407 U.S. at 531))).

In analyzing the reason-for-delay factor here, the causes for the roughly twenty months of delay appear to fall into three categories: (1) motions filed by Willis, including multiple requests for new counsel; (2) the two requests for competency evaluations; and (3) the ongoing COVID-19 pandemic. Interestingly, Willis does not say much about this factor, simply asserting that "[t]he reason for delay in this case … is neutral," and neglecting to even note what that reason or reasons might be. (Mot. to Dismiss, Doc. 49, #232). Still, "[t]he State bears the burden of explaining the cause of the delay." *Romanwoski*, 845 F.3d 703. Here, the government argues that the delay arose from "motion practice, a global pandemic, Willis's firing of multiple defense attorneys, and determinations of Willis's competency to stand trial, as well as his

treatment for COVID-19." (Resp. in Opp'n, Doc. 52, #268). Looking at those reasons, the government argues that "Willis himself caused most of the delay." (*Id.*).

As noted, the speedy trial right is principally designed to prevent *the government* from unduly hampering a defendant's liberty. So, when delay arises for some "valid" reason outside of the government's control, that necessarily means that it was *not* the government that denied the defendant a right to speedy trial. *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) ("[V]alid reasons for a delay weigh in favor of the government.") (citing *Barker*, 407 U.S. at 531). Here, the record clearly shows that the delay neither arose because the government was stalling, nor due to the Court ignoring the case. Indeed, after Willis's first competency evaluation concluded, the Court held status conference after status conference trying to move the matter along, only to be stymied by Willis's motions and his serial dissatisfaction with various counsel.

Recapping the events illustrates the point. After the competency hearing in June 2020, the Court set a trial date for August 18, 2020. Willis then requested new counsel on July 9, 2020. That, combined with the COVID-19 pandemic, resulted in pushing the trial date back to September 8, 2020. And Willis then again moved to continue the trial, which the Court reset to November 30, 2020. But that was not to be, as Willis once again obtained new counsel in September 2020 and then again in November 2020. What is more, Willis's third counsel withdrew *three days* before a scheduled change of plea hearing. The Court finds almost all those delays attributable to Willis.

Willis's current counsel does not meaningfully dispute any of this. At the hearing on this motion, Willis instead tied his constitutional claim almost exclusively to the delay arising from the second competency hearing, which he says was uncalled for. Two comments on that front. First, it was Willis's own counsel (at the time) who raised the renewed concerns regarding competency, so the associated delay is largely attributable to Willis, not the government. Second, even if the second competency evaluation was not warranted (and, as discussed below, the Court does not agree with that), that delay was only a matter of a few months, which is not sufficient to constitute presumptively prejudicial delay for Sixth Amendment purposes. Accordingly, and perhaps not surprisingly, at the hearing on this motion, Willis largely disclaimed any reliance on his constitutional speedy trial claim.

### 3. *Willis Did Not Vigorously Assert His Right To A Speedy Trial.*

The third *Barker* factor is "[w]hether and how a defendant asserts his right" to a speedy trial. *Barker*, 407 U.S. at 531. Here, Willis asserted his right to a speedy trial when he filed the instant Motion in February of this year. But that is not the end of the inquiry. This prong does not simply ask whether the defendant *ever* pressed a speedy trial right; it requires the Court to probe "the degree to which the defendant has asserted the right" to a speedy trial. *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999). The logic is "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. To properly make this assessment, the Court must look to "whether [Willis's] surrounding conduct" demonstrates that

he actually wanted to have a speedy trial. *United States v. Young*, 657 F.3d 408, 417 (2011).

Here, as noted, Willis repeatedly requested continuances so that he could procure new counsel and provide each of those new counsel time to get up to speed in reviewing his case. What is more, Willis's first counsel requested the first competency evaluation, and a later counsel voiced the concerns that resulted in the second competency evaluation. Throughout all of this, Willis never once raised speedy trial concerns to the Court. To be sure, as Willis points out, he did move for the Court to reconsider his detention in April 2020. But that motion only considered Willis's pretrial detention and primarily argued that Willis should not have been detained during the COVID-19 pandemic for safety reasons. None of that demonstrates an interest in resolving the case in a timely manner, but only showed Willis did not wish to be detained while awaiting trial.

Separately, at the hearing on this motion, Willis stated that he had told a previous counsel about his speedy trial concerns. That may well be true, but those concerns never came before the Court. Unexpressed concerns about the passage of time, especially when coupled with motions seeking a continuance of the trial date, do not cut it for purposes of the third *Barker* factor. Thus the Court finds that this factor weighs against Willis's Sixth Amendment speedy trial claim.

### 4. *Willis Failed To Identify Any Specific Prejudice.*

The final *Barker* factor requires Willis to "show that 'substantial prejudice' has resulted from the delay." *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011)

(quoting *Schreane*, 331 F.3d at 557). Courts assess prejudice in light of "the interests which the right to speedy trial is designed to preserve." *United States v. Graham*, 128 F.3d 372, 375 (6th Cir. 1997). These interests include "(i) prevent[ing] oppressive pretrial incarceration; (ii) … minimiz[ing] anxiety and concern of the accused; and (iii) … limit[ing] the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The last concern is "the most serious," "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *United States v. Brown*, 498 F.3d 523, 532 (6th Cir. 2007) (quoting *Barker*, 407 U.S. at 532).

This prong often presents a challenge for defendants because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532). In some cases, however, the government's conduct is so egregious that a defendant need not show "affirmative proof of particularized prejudice." *Id.* at 655 (citations omitted). One such instance is where the government delays the defendant's trial in "bad faith." *Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir. 2001).

Courts can likewise presume prejudice under *Barker*'s fourth factor when the length of the delay is "excessive." *Romanowski*, 845 F.3d at 717. *See also Doggett*, 505 U.S. at 655 (observing that "excessive delay presumptively compromises the reliability of a trial"). Of course, "excessive" for these purposes is necessarily different from—and longer than—the threshold delay needed to trigger analysis under *Barker*'s first factor. The basic idea, though, is that the prejudice associated with

delay "intensifies over time," and, at some point, does not merely trigger analysis, but actually suggests a violation in its own right. *Doggett*, 505 U.S. at 655.

Neither situation applies here. As "the delay is overwhelmingly due to [Willis's] own evasion, he is not entitled to a presumption of prejudice" based on bad-faith conduct. *Wilson*, 250 F.3d at 396. And the delay in this case is just under two years, which, while enough to meet the threshold under *Barker*'s first factor, is not "excessive" for purposes of the fourth factor under Sixth Circuit standards. *See Romanowski*, 845 F.3d at 717 (finding that a twenty-five-month delay did "not entitle[] [the defendant] to a presumption of prejudice under the fourth factor"); *see also United States v. Jackson*, 473 F.3d 660, 667 (6th Cir. 2007) (holding that a twenty-month delay "was not so long as to justify an inference of prejudice at the fourth step of the *Barker* inquiry").

The Sixth Circuit thus requires Willis to identify "specific" and "substantial" prejudice caused by delay. *Young*, 657 F.3d at 418. He presses various arguments in that regard. First he contends that being "subject to oppressive pretrial incarceration" without "programming or educational activities" has diminished his mental state such that it detracts from his ability to prepare his case. (Mot. to Dismiss, Doc. 49, #233). Next, he argues that the delay here means that "the memory of potential witnesses" could have been compromised, although Willis does not specify which witnesses those might be. (*Id.*). Continuing on, Willis says that his numerous moves from facility to facility resulted in his notes and research papers being disposed of, thereby hampering his defense. (*Id.* at #234). Finally, he claims that he could not

access the law library during his detention. (*Id.*). So, in his view, these issues resulted from the delay and thus the delay here has prejudiced his case.

To start, Willis's vague claim about potential witness testimony being compromised over time fails to meet the "specific" and "substantial" prejudice requirements. *See, e.g.*, *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (holding that a defendant's blanket claim that his deceased mother "could have supported defense assertions of innocence at trial" was not sufficient to establish prejudice); *see also Young*, 657 F.3d at 420 (finding no specific prejudice when "it is hard to evaluate any significance [the absent witness's] testimony might have had"). And the Court rejects Willis's contention that he suffered prejudice because an unnamed witness's memories *might* have dissipated regarding unspecified evidence or potential questions that the defense might pose. In any event, as the government points out, the events here were caught on video. So the Court struggles to see what specific prejudice Willis faces merely because of unidentified witnesses potentially having murkier recollections of the events.

The same vagueness problem plagues Willis's general assertion that conditions of confinement have impaired his defense. In short, he argues that being confined resulted in (1) his mental state deteriorating; (2) his papers and notes relating to the case being lost or destroyed; and (3) an inability to access a law library. Given those allegations, the Court considers whether those shortcomings caused "the possibility that [Willis's] defense will be impaired." *Barker*, 407 U.S. at 531. Here, Willis fails to identify how these problems have inhibited him from raising any particular defenses.

That lack of specificity poses a problem. *See Young*, 657 F.3d at 419 (noting that a defendant must show "how his defense was prejudiced *with specificity*").

Still, a defendant can suffer prejudice under *Barker* if the delay causes "the inability of a defendant to adequately prepare his case." *Id.* at 418. But it is not clear that any of Willis's allegations support such a finding. To start, Willis's alleged loss of records does not show prejudice under *Barker*. Absent a declaration showing that (1) Willis's jail-cell notes and papers existed, (2) that they became unavailable due to the delay in this case, or (3) that those papers would have assisted Willis's case, the Court finds the loss of those records has not prejudiced Willis, especially given that he has counsel capable of conducting research on his behalf. *See id.* at 420 (finding no prejudice for lost records because defendant failed to provide a declaration showing how those records bolstered defendant's case or how the delay affected the records). Furthermore, Willis failed to specify how his inability to access a law library prejudiced his case, given that he has been represented by counsel from the start. Likewise, given Willis's representation and a video capturing the events in question, Willis has not shown how his alleged mental harm suffered during the delay has harmed his defense. All in all, Willis has not pointed to a specific impact of the delay that his prejudiced his case.

In sum, all the *Barker* factors, aside from length of delay, point to the conclusion that the government did not violate Willis's Sixth Amendment right to a speedy trial. *See United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) ("When the government prosecutes a case with reasonable diligence, a defendant who cannot

demonstrate how his defense was prejudice *with specificity* will not make out a speedy trial claim no matter how great the ensuing delay." (emphasis added)). This is one of those cases where, as the Supreme Court remarked in *Doggett*, the "pretrial delay [was] … both inevitable and wholly justifiable." 505 U.S. at 656.[2]

## B. The Government Did Not Violate Willis's Statutory Speedy Trial Right.

Separately, Willis argues that the delay in this matter violated his statutory speedy trial right under 18 U.S.C. § 3161. The statutory speedy trial right, unlike its wilier, constitutional cousin, boils the speedy trial right down to a fairly precise calculation. Specifically, the statute requires that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant … shall commence within seventy days." 18 U.S.C. § 3161(c)(1). The clock starts ticking on either "the date the defendant has appeared before a judicial officer of the court" or "the filing date (and making public) of the information or indictment," "whichever date last occurs." *Id.* Here, Willis made his initial appearance before Magistrate Judge Bowman on September 11, 2019, about two weeks after the Grand Jury issued the indictment on August 28, 2019. Accordingly, Willis's statutory speedy trial clock started running on the latter of those two dates, or on September 11, 2019.[3]

But the speedy trial clock does not always expire a strict seventy days from the date it starts. This is because the Speedy Trial Act excludes certain time periods from

---

[2] Indeed, as noted above, Willis largely conceded as much at the motion hearing, limiting his argument to the Speedy Trial Act issue, rather than the constitutional one.

[3] The date of the arraignment does not count for purposes of the speedy trial act calculation. *United States v. Mentz*, 840 F.2d 315, 326 (6th Cir. 1988) (citations omitted).

the calculation. 18 U.S.C. § 3161(h). Here, no exclusion occurred between Willis's arraignment on September 11, 2019, and October 8, 2019, when Willis filed a motion to continue. Although the Court granted that motion the day it was filed, the day a motion is filed is excluded from the count under the Speedy Trial Act. But the clock began running again on October 9, 2019, and continued through November 7, 2019, when Defendant filed a Motion for Psychiatric Exam in order to determine Willis's competency. Because competency evaluations toll the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(A), the clock ran from September 11, 2019, until November 7, 2019 (with the exception of October 8, 2019). That means fifty-six days accrued for Speedy Trial Act purposes before Willis underwent his first competency evaluation.

This is all prelude to the main dispute between Willis and the government regarding Willis's statutory speedy trial right; namely, whether the time Willis spent committed to mental-health facilities while undergoing his two competency evaluations counts for Speedy Trial Act purposes. Willis asserts that, under 18 U.S.C. § 4241(b), a court cannot commit a defendant to be examined for more than 30 days and cannot grant more than a fifteen-day extension for evaluations, even if the facility shows good cause for a delay. The government counters that the Speedy Trial Act excludes "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A).

Unfortunately for Willis, the Sixth Circuit has considered the very argument that he presses here and rejected it. *See United States v. Tinklenberg*, 579 F.3d 589,

595 (6th Cir. 2009), *aff'd on other grounds*, 563 U.S. 657 (2011) ("This Court and '[e]very court that has decided this issue ha[ve] concluded that § 4247(b) does not limit the time period for a competency examination with respect to calculations under the Speedy Trial Act.'" (quoting *United States v. Murphy*, 241 F.3d 447, 456 (6th Cir. 2001))); *see also United States v. Zabawa*, 719 F.3d 555, 562 (6th Cir. 2013) ("[Defendant's] evaluation lasted 37 days, so he says we should add 7 days to the speedy-trial clock. But this argument is foreclosed by precedent."). In short, insofar as Willis complains about the admittedly lengthy amount of time he was committed to mental health facilities for competency evaluation purposes, the Court finds his argument barred by precedent. Rather, the Speedy Trial Act clock stops from the time that a party files a motion to determine competency, through the time that the competency hearing occurs.[4] *See Murphy*, 241 F.3d at 456; *Zabawa*, 719 F.3d at 562 ("[T]he [Speedy Trial Act] clock stays stopped until the court makes a competency finding.").

With that in mind, the record in this case shows that no days ran for Speedy Trial Act purposes after Willis's initial November 7, 2019, Motion for Psychiatric Examination. While the first evaluation was pending, Willis moved the Court to reconsider his detention on April 9, 2020. A defendant's pretrial motion pauses the Speedy Trial Act clock until the Court has received all filings relating to that motion. *United States v. Moran*, 998 F.2d 1368, 1371 (6th Cir. 1993). The Court received

---

[4] There is one partial exception to this rule. Time for *transport* to and from the evaluation facility is limited to ten days. Any transport time in excess of that ten-day limit does count against the Speedy Trial Act clock. *See Zabawa*, 719 F.3d at 562. But no one has suggested transport time in excess of ten days here.

Willis's reply brief on June 22, 2020, at which time briefing concluded. So the time between April 9, 2020, and June 22, 2020, did not count for Speedy Trial Act purposes. What is more, the Court issued an EOJ Order on June 19, 2020, three days *before* receiving Willis's reply brief, that tolled the Speedy Trial Clock until August 18, 2020 (the scheduled trial date). On August 10, 2020, the Court issued a new EOJ Order excluding time from that date until September 8, 2020, pursuant to a General Order based on COVID-19 concerns. Then the Court granted Willis's Motion to Continue Trial (Doc. 35), and entered an EOJ Order excluding time until November 30, 2020 (Doc. 36). Before that continuance lapsed, the Court granted the government's Motion for Order of Competency on November 13, 2020, pausing the clock for that competency evaluation.

In addition, the government moved for a *Lalfer* hearing on August 17, 2020, and no such hearing has yet been held (given the various trial date twists and turns that have occurred since that time). The *Lafler* hearing is currently scheduled for June 2, 2021. For pretrial motions "that require a hearing," the period between the motion and the hearing is excluded despite "whether that hearing was prompt or not." *Henderson v. United States*, 476 U.S. 321, 326–27 (1986); *see also United States v. Gardner*, 488 F,3d 700, 717 (6th Cir. 2007) ("Excludable time for pretrial motions includes all of the days during which the court is waiting to receive information necessary to decide a pending pre-trial motion. If a motion requires a hearing, the entire time from the filing of the motion through the date of the hearing is excludable." (internal citation omitted)); *United States v. Felix*, No. 1:17-cr-009, 2019

WL 2027226, at *5–6 (S.D. Ohio May 8, 2019) (holding that the government's pretrial motions requiring a hearing tolled the statutory speedy trial clock). So, given the continuances and various motions here, the Court concludes that no time ran from the Speedy Trial Act clock after November 7, 2019.

Willis's main argument to the contrary is that the second competency motion was improperly granted, and thus the days associated with that competency evaluation should count against the Speedy Trial Act clock. In particular, Willis maintains that, although his previous counsel was acting as counsel at the time he raised the competency concerns in November 2020, the Court granted counsel's motion to withdraw the day *before* granting the government's motion for a second competency hearing. Thus, at the time the Court granted the motion, Willis was not represented, and therefore, Willis argues, it was improper for the Court to order a competency evaluation.

The Court finds Willis's argument unavailing both on the law and the facts. Start with the law. The Court asked Willis's counsel at the hearing whether he could cite any case support for the notion that, if a court improvidently grants a request for a competency evaluation, the delay from that competency evaluation should count against the seventy-day Speedy Trial Act clock. Counsel cited no such precedent. Based on the Court's own research, it appears that case law, at least from outside the Circuit, cuts the other way. *See United States v. DeGarmo*, 450 F.3d 360, 363 (8th Cir. 2006). In *DeGarmo*, the defendant argued that "the delay [arising from a competency evaluation] … should not be excluded [from Speedy Trial Act

calculations] because the magistrate judge improperly relied upon defense counsel's inadequate representations concerning DeGarmo's competency and the magistrate judge therefore lacked 'reasonable cause' to order the competency examination." *Id.* The Eighth Circuit resoundingly rejected that argument: "the [Speedy Trial Act] does not adopt either the 'reasonable cause' standard set forth in § 4241(a) or the 30-day time limit set forth in § 4247(b). The [Speedy Trial Act] instead provides that [Speedy Trial Act] calculations must exclude '*[a]ny* period of delay … resulting from *any* proceeding, including *any* examinations, to determine the mental competency or physical capacity of the defendant.'" *Id.* (quoting 18 U.S.C. § 3161(h)(1)(A)).

Willis provides the Court no reason to stray from the Eighth Circuit's reliance on the statute's plain meaning. And under that reasoning, days that pass while a medical facility conducts a competency hearing do not count against the statutory speedy trial clock, even if the Court's reliance on counsel's representations about his client's competency proved unreasonable. In the end, Willis cannot show that time related to competency evaluations counts towards the statutory speedy trial clock.

The Court also rejects the argument as a factual matter. Willis's counsel was better positioned than the Court or the government to assess Willis's behavior. The concerns that he raised seemed well-founded and sincere. The government's, and the Court's, reliance on those concerns thus was not unreasonable. All agree that a defendant's competency may change over time. Counsel's concerns represented new information regarding Willis's then-current competency, thus justifying the Court's decision to grant the government's request for a second competency hearing. And,

had the Court instead waited for new counsel to come on board and do whatever he thought necessary to form his own opinion regarding potential competency concerns, the delay quite likely would have been longer than what occurred as a result of the Court moving forward promptly upon being informed of the concerns.

Thus, both as a matter of law and as a matter of fact, the Court rejects Willis's argument that the Speedy Trial Act clock should have run during his second competency evaluation. Accordingly, a total of fifty-six days have elapsed out of the seventy on the statutory speedy trial clock. The Court therefore finds that there was no violation of Willis's statutory speedy trial right.

## CONCLUSION

For the reasons above, the Court **DENIES** Willis's Motion to Dismiss (Doc. 49).

**SO ORDERED.**

April 29, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**