## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

                                        **Case No. 1:19-cr-102**

     **v.**                           **JUDGE DOUGLAS R. COLE**

**TERRY WILLIS,**

     **Defendant.**

### OPINION AND ORDER

This cause is before the Court on Defendant Terry Willis's Motion to Withdraw Guilty Plea (Doc. 75) and Supplemental Motion to Withdraw Guilty Plea. (Doc. 92). For the below reasons, the Court **DENIES** Willis's Motions, precluding him from withdrawing his plea of guilty.

### BACKGROUND

Willis's criminal prosecution has been ongoing for more than three years with many delays and changes in course, virtually all of which occurred at Willis's request. Because those machinations are relevant to the ultimate question here, the Court begins by explaining the procedural history in some detail.

### A. Willis Is Indicted And Engages In Extensive Pretrial Proceedings.

On August 28, 2019, a Grand Jury indicted Willis on three counts—one drug-related offense and two firearm-related offenses. (Doc. 1, #1–2). The Magistrate Judge ordered him detained pending trial. (Doc. 11). Roughly three months later, on

November 7, 2019, Willis's counsel filed a motion requesting a competency evaluation (Doc. 15), which the Court granted (Doc. 17). The Court received the competency evaluation on May 13, 2020, and held a competency hearing on June 10, at which the Court found Willis competent. (6/10/20 Min. Entry).

On July 9, Willis's counsel moved to withdraw. (Doc. 26). A week later, the Court granted that motion and appointed Willis new counsel. (Doc. 29). At the time, the Court had set trial for August 18, 2020. However, the Court vacated that trial date due to COVID-related reasons and reset the trial for September 8, 2020. (8/10/20 Min. Entry).

On August 20, with trial fast approaching, Willis requested a continuance. His attorney asserted that "counsel needs additional time to not only ensure that Terry understands the gravity of his circumstances ..., but also to prepare a defense." (Doc. 35, #182). The Court granted the request and reset the trial for November 30, 2020. (8/25/20 Min. Entry and Not. Order).

On September 14, a new attorney (the third) moved to substitute as Willis's counsel. (Doc. 39). Unlike the previous two attorneys, Willis retained this attorney himself. The Court granted the request. (9/15/20 Not. Order). The case continued toward the November 30 trial date. That changed on October 19, though, when the Court was informed that it should convert the final pretrial conference, then set for November 12, into a change of plea hearing. (10/19/20 Notice).

Three days before that plea hearing, on November 9, the case changed course again. Willis's counsel moved to withdraw, claiming that Willis "does not trust counsel" and that "the attorney/client relationship has been broken." (Doc. 40, #195).

On November 12, the Court held a status conference to discuss the then-pending motion to withdraw. During that conference, counsel for both Willis and the government renewed concerns about Willis's competency. (11/12/20 Min. Entry). The government filed a motion seeking a competency evaluation that same day. (Doc. 42).[1] The Court granted both (1) the motion seeking a competency evaluation (11/13/20 Order, Doc. 44, #45; 11/24/20 Am. Order, Doc. 45), and (2) the motion to withdraw (11/13/20 Order, Doc. 43). The Court appointed Willis new counsel (*id.*), and ordered Willis transported for another psychological evaluation (Doc. 45).

On March 2, 2021, the Court received the forensic psychologist's report. (Doc. 48). At a subsequent competency hearing, the Court again found Willis competent based on the psychologist's report. (4/7/21 Min. Entry). The Court also set a trial date of June 14, 2021. (Doc. 53).

Willis's counsel then requested funding for an expert to review the body-camera footage detailing Willis's arrest. (Doc. 57). As the Court understands it, Willis contends that the government altered the video footage from the three officers to make it appear that Willis had a gun and drugs on his person when police arrested

---

[1] Although the motion is listed on the docket before the minute entry, the government filed the motion *after* the status conference (but before the minute entry for that conference was docketed).

him. Willis hoped that an expert could validate his fabrication concerns. In any event, the Court granted his request for funding on May 21, 2021. (5/21/2021 Not. Order).

Four days later, on May 25, Defendant's counsel advised the Court that Willis intended to plead guilty. (5/25/21 Notice). Accordingly, the Court converted the final pretrial conference, then set for June 2, into a change-of-plea hearing. (*Id.*). When Willis arrived at Court that day, though, he advised the Court that he had changed his mind and again wished to proceed to trial. (6/2/21 Min. Entry). He also requested time to review what he referred to as recently obtained information and retain the expert that the Court had authorized. (*Id.*). Complying with Willis's request, the Court set a final pretrial date of August 26, and a trial date of September 7, 2021. (*Id.*).

Shortly thereafter, the government indicated that its witnesses were unavailable on that date. Given Willis's expressed desire to proceed to trial as soon as possible, the parties agreed that the Court should advance the trial date, rather than further delay it. Accordingly, the Court moved the trial up to August 24, 2021, with a final pretrial reset for August 11. (Am. Cal. Order, Doc. 64).

On August 5, the Court reset the final pretrial to August 17. And then, on that day, the Court reset the final pretrial for the following day, due to potential Covid-exposure concerns.

## B. The Court Holds A *Lafler* Hearing And Final Pretrial Conference.

On August 18, 2021, the parties appeared for the final pretrial conference. The Court began by conducting a *Lafler* hearing. (Doc. 80, #461). The government stated

4

the plea offer it had made to Willis, (*id.* at #463–64), and confirmed that on two separate occasions, Willis's attorneys (a different attorney each time) communicated rejections of that offer (*id.* at #464).

When the Court asked Willis to confirm he had received and rejected the offer, Willis equivocated:

> THE COURT: All right. So, Mr. Willis, you heard Ms. Rossi's description of a plea deal that was extended to you and which she represents that you have rejected. Is she correct?
>
> THE DEFENDANT: Not in its entirety, Your Honor.

(*Id.* at #465). When asked to clarify, Willis explained that he understood he had "several options," but believed that the options were "coercive" and that it "wasn't appropriate for [him] to make a decision on these pleas because the plea options were sent by mail." (*Id.*). After an extended colloquy regarding the proposed plea offer, though, Willis ultimately made clear: "I don't want it." (*Id.* at #476).

The Court then engaged in a thorough final pretrial conference covering a host of trial preparation topics. (*Id.* at #476–90). Near the end, Willis interjected twice. First, he raised issues regarding his video expert. (*Id.* at #490). In particular, Willis expressed concern that his attorney had not shared with Willis any expert report from the video expert. (*Id.*). The attorney confirmed that he had not received a written report, but stated that he had received an oral report and shared the results with his client. (*Id.* at #492–93). The Court offered to continue the trial date. The parties, however, elected to proceed to trial as scheduled, with the government stipulating it would allow Willis to call the expert if he wished, after Willis obtained and reviewed a written report. (*Id.* at #495–96).

Second, Willis personally addressed the Court to explore how the defense would be allowed to use *Giglio* material at trial. (*Id.* at #529). The Court endeavored to address his questions on that front. (*Id.* at #529–32).

With everything on the Court's agenda complete, the government asked to discuss the *Old Chief* stipulation issue.[2] (*Id.* at #534). The Court determined that the best way to proceed was to provide Willis additional time to consider the issue. (*Id.* at #534–35). And the Court encouraged him to discuss the issue carefully with his attorney before the upcoming trial. (*Id.* at #536).

## C. Afterwards, Willis Confers Privately With Counsel And Indicates That He Would Like To Change His Plea.

Willis then interjected again to inquire about the trial date moving from September 7, 2021, to August 24, 2021. In particular, he wanted to confirm that this change in trial dates was not a "continuance" that would "count against" him. (*Id.* at #538–39). Although not entirely sure what Willis's concerns were, the Court believed they related to Willis's Speedy Trial Act rights.

Given the Court's confusion, the Court attempted to explore what Willis meant by his comments and to ensure that Willis was not asking to continue the trial. (*Id.* at #539–40). To confirm what Willis meant, the Court asked whether he wished to proceed with the trial the following week. (*Id.* at #539). Willis again waffled. (*Id.* at #539–42).

---

[2] An "*Old Chief* stipulation" refers to a situation in which a defendant on a § 922(g) charge stipulates to the existence of the prior felony so that the government does not need to prove the prior felony at trial. *See Old Chief v. United States*, 519 U.S. 172 (1997). The usual concern is that proving the details of the prior felony may prejudice the jury against the defendant in the present action.

6

Because some of Willis's concerns about a trial included matters that touched on trial strategy, the Court asked the government to leave the courtroom. (*Id.* at #542). The Court then engaged in a sealed, ex-parte discussion with Willis and his counsel. (Doc. 79). Willis and his counsel began discussing whether the terms of the plea deal were "favorable." (*Id.* at #452–53). The Court interjected to note that it could not be a party to such conversations:

> The Court's concern … is I can't play any role in plea negotiations, and I don't want to play and I'm not going to play any role in plea negotiations.
>
> I'm not going to advise you, Mr. Willis, as to whether it's a favorable or an unfavorable deal. That is a discussion that is between you and your counsel and something that you need to think about. I'm sure your counsel has explained potential outcomes, and you need to sort of sort through what you want to do with that information, and that's between you and him.
>
> The only thing I can control at this juncture is whether we go to trial on Tuesday or not. It's my understanding that you would like to go to trial on these charges on Tuesday, in lieu of accepting the plea deal that was previously made which, technically, isn't even necessarily open at this point, so—but, you know, help me help you, Mr. Willis. What additional information can I provide you sir?

(*Id.* at #453). Willis then asked the Court to explain how the Sentencing Guidelines calculations work, particularly the impact of a three-point reduction for acceptance of responsibility under those guidelines. (*Id.* at #454). The Court proceeded to briefly—and very generally—explain how the Sentencing Guidelines would account for these reductions. (*Id.* at #454–56).

Following this discussion, counsel conferred privately with his client. (*Id.* at #456). Upon completion of the conference, counsel stated: "The conference that Mr. Willis and I just had is that he now wishes to change his plea to guilty on all three

7

charges." (*Id.*). Willis then started to explain why that was the case, but the Court urged him to exercise caution in doing so. (*Id.*). Again noting that the Court could not and would not involve itself in plea negotiations, the Court suggested that counsel speak with the government about a potential plea. (*Id.* at #456–57). The Court then took a recess. (*Id.* at #457).

After the recess, both parties informed the Court that Willis had agreed to accept a plea offer. (Doc. 80, #543). The Court then confirmed that fact with Willis himself:

> THE COURT: And it's your desire to plead guilty, is that right, Mr. Willis.
> THE DEFENDANT: Yes, sir. After discussing with my attorney, yes, sir.

(*Id.* at #544).

## D.    The Court Then Holds An Extensive Plea Hearing With Willis.

At that point, the Court converted the final pretrial conference into a plea hearing. (*Id.* at #542–53). During that hearing, the Court placed Willis under oath, (*id.* at #549), and then at length explored his understanding of the nature of the charges, as well as advising him of the various matters Federal Rule of Criminal Procedure 11(b) requires (e.g., advising Willis of his right to go to trial, his rights at trial, and the consequences of his plea). (*See generally id.* at #542–75).

Perhaps most important to the current motion, the Court also explored the factual basis for the plea in detail. *See* Fed. R. Crim. P. 11(b)(3). The government's attorney read a detailed statement of facts describing Willis's arrest and the discovery of the gun and controlled substances. (Doc. 80, #567–71). Showing Willis's

8

attentiveness, when the Court asked Willis about the correctness of the statement. Willis then indicated his disagreement with one detail: specifically, he objected to the portion alleging that Willis had reached for his waistband (where officers recovered the gun) during his struggle with police. (*Id.* at 571). With that disagreement addressed, Willis, still under oath, confirmed the truth and accuracy of the statement of facts.[3] (*Id.* at #571–72). The Court then accepted his plea. (*Id.* at #574–75).

### E.   Willis Moves To Withdraw His Guilty Plea.

Although long in the making, Willis's desire to plead guilty proved short-lived. According to Willis, he informed his counsel just eight days later that he wished to withdraw his guilty plea and proceed to trial. (Mot. to Withdraw, Doc. 75, #439). Willis's counsel, however, moved to withdraw from the representation on September 7, 2021, citing a breakdown in communication and trust. (Doc. 72, #424). The Court held an ex parte hearing on counsel's motion to withdraw on October 5, 2021 with counsel and defendant only. During that hearing, Willis first informed the Court of his desire to change his plea to not guilty. (Doc. 82, #597).

Based on Willis's and his counsel's representations that withdrawal of counsel was no longer necessary, the Court denied without prejudice counsel's motion to withdraw. Shortly thereafter, on October 25, Willis formally moved to withdraw his guilty plea (the pending motion in the instant Opinion). (Doc. 75).

---

[3] Before Willis admitted his guilt, the Court admonished Willis that he was under oath and may open himself up to perjury charges should he lie. (Doc. 80, #549).

9

On March 1, 2022, Willis's counsel renewed the motion to withdraw from the representation. (Doc. 86). On March 30, the Court granted the motion and appointed Willis new counsel that same day. (Doc. 87). The Court then set a hearing on the motion to withdraw the guilty plea. (4/22/22 Notice). At the request of Willis's new counsel, though, the Court first continued that hearing to a later date (5/16/22 Notice), and then, again at Willis's request, vacated that later date (6/2/22 Not. Ord.). The Court reset the hearing for August 29, 2022, (7/19/22 Notice), only to once again continue the hearing at Willis's renewed request, (8/29/22 Min. Entry).

Willis supplemented his motion to withdraw his guilty plea on September 25, 2022. (Doc. 92). The Court held a hearing on the motion and the supplemental motion on October 20. (10/20/22 Min. Entry).

## F. Willis Raises Both Constitutional And Statutory Arguments To Attack His Guilty Plea.

### 1. Willis bases his initial motion on Rule 11(d).

In his initial Motion (Doc. 75) filed in the fall of 2021, Willis bases his arguments on Federal Rule of Criminal Procedure 11(d). First, he reports that he sought to withdraw his guilty plea almost immediately, within eight days, and that he should not be faulted for any subsequent delay. (*Id*. at #439). Second, he argues that other than those eight days, he has maintained his innocence over the past two years. (*Id*. at #440). Third, Willis contends that he received inaccurate information from his expert. (*Id*.). Fourth, he argues that he has no background in federal court, so he lacked the experience to understand his actions. (*Id*.). Finally, he contends that the government will not be prejudiced by his withdrawing his guilty plea. (*Id*.).

**2.     In his Supplemental Motion, Willis seemingly argues he did not knowingly and voluntarily enter his plea.**

In his Supplemental Motion (Doc. 92) filed roughly a year later, Willis mounts a new line of attack. Although he does not explicitly say as much, Willis appears to argue that he did not knowingly and voluntarily enter his guilty plea. First, he claims his attorney misinformed him of the work his expert performed in analyzing the video evidence. (*Id.* at #638). Specifically, Willis claims his expert only analyzed one of the available three videos and allegedly only listened to audio even though the media file also contained video. (*Id.*). Second, he claims he received incorrect sentencing information from the probation office, telling him he was a career offender. (*Id.*). Third, Willis contends that the Court improperly involved itself in plea negotiations. (*Id.* at #640). Finally, Willis appears to make a distinct Fifth Amendment claim by alleging he was not physically present during critical stages of the proceedings. (*Id.* at #639).

**3.     Willis testifies in support of his Motion to Withdraw.**

At the hearing on October 20, 2022, the Court heard testimony from Willis concerning his Motion to Withdraw. (Doc. 94). Willis used the opportunity to clarify the points raised in his Motions and to elaborate on how he perceived the events that led to his guilty plea.

Willis began by arguing that his counsel misled him as to the scope of the defense expert's work. (*Id.* at #664–69). Although counsel had passed along the expert's oral representations concerning the authenticity of the police body-camera footage, Willis did not receive the expert's written report until after he had changed

11

his plea to guilty. (*Id.*). Willis claims he only changed his plea based on his expert's conclusion that the videos contained no anomalies. (*Id.*). But when he finally received the report, he alleges he learned for the first time that the expert had reviewed only one body-camera video, and only the audio portion of the media file at that. (*Id.*). Willis claims that, once he learned this, he immediately informed counsel that he wished to withdraw his plea. (*Id.* at #667). Accordingly, he believes he entered his plea unknowingly and involuntarily because he would not have done so had he known this information ahead of time. (*Id.*).

Next, Willis testified that he did not receive notice of various pre-trial and ex parte communications between the Court and his counsel, which he believed were critical stages of the proceeding he was entitled to attend. (*Id.* at #669–71). This included the November 12, 2020, status conference—during which his then-counsel discussed submitting him to another competency evaluation. (*Id.*). He also believed that his inability to attend that hearing somehow deprived him of the ability to retain his counsel. (*Id.*).

Then, Willis relayed that his prior counsel informed him that, under the Sentencing Guidelines, he would get a three-point offense level reduction if he pled guilty. (*Id.* at #672). But Willis reported that he subsequently determined that he could get these three points off even if he went to trial. (*Id.* at #673). Willis never explains how he arrived at this conclusion. But he claims that he would not have pled guilty had he known he could get the same reduction after trial. (*Id.* at #672–75).

Willis then testified that he involuntarily pled guilty under pressure from the Court, fearing he had "pissed off" the undersigned judge by not pleading guilty earlier. (*Id.* at #682–83). He argued the government improperly asked the Court to re-raise the plea offer Willis had already rejected, coercing him to accept it. (*Id.* at #686). Specifically, he zeroes in on the Court's statement to Willis, in which the Court said "help me help you," as evidence of coercion. (*Id.* at #689–90). (The statement to which he refers appears at Doc. 79, #453.) Willis believed these actions also constituted judicial participation in the plea negotiations in violation of Rule 11(c)(1).[4] (Doc. 94, #692–93).

Next, Willis complained that counsel and the Court blindsided him by discussing the *Old Chief* stipulation during his final pretrial conference. (*Id.* at #687). He claimed he had not heard of *Old Chief* before and thought this "stipulation" meant that the jury (now) would hear he had committed ten bad acts. (*Id.*). He argued that this led him to think he had to plead guilty instead of going to trial. (*Id.* at #687–89).

Willis concluded his testimony by asserting his actual innocence. (*Id.* at #699). But when the government sought to explore that sworn testimony further on cross-examination, Willis attempted to invoke his Fifth Amendment right against self-incrimination. (*Id.* at #707–08). He repeated that he believed he was "not guilty" but refused to elaborate. (*Id.* at #715–16). After the Court explained that he had opened the door to such questions by asserting his factual innocence on direct examination,

---

[4] Although the Supplemental Motion cites to Federal Rule of Criminal Procedure 11(e)(1), during the hearing Willis clarified this objection fell under Rule 11(c)(1). (Doc. 94, #693).

he finally testified he did not have a gun or drugs on him the day in question.[5] (*Id.* at #716). But even then, he declined to offer a basis or explanation for that assertion short of a blanket denial of participating in criminal activities. (*Id.* at #716–24).

After Willis concluded, the Court asked his counsel which of the grounds outlined in the briefing counsel intended to maintain following Willis's testimony. (*Id.* at #725). Counsel then withdrew the Rule 11(c) and improper sentencing information claims.[6] (*Id.* at #725–26). However, Willis requested his counsel state for the record that Willis disagreed with counsel withdrawing any arguments. (*Id.* at #743). Therefore, although his counsel withdrew some of the grounds, the Court will address all of them given Willis's disagreement with that withdrawal.

## LAW AND ANALYSIS

As best the Court can tell, Willis's efforts to undo his guilty plea fall into three general categories. First, he seems to argue that he did not knowingly and voluntarily enter his plea of guilty, rendering the plea invalid on constitutional grounds. Second, even if his plea was valid when made, Willis contends the Court should permit him to withdraw it under Federal Rule of Criminal Procedure 11(d). Third, Willis argues that the Court's failure to secure his presence at certain pre-trial conferences justifies

---

[5] Before Willis asserted his innocence, the Court once more admonished Willis that he was under oath and may open himself up to perjury charges should he lie. (Doc. 94, #702).

[6] As counsel acknowledged at the hearing, Willis's Supplemental Motion argued that he received improper sentencing information from the Probation Office concerning his status as a career offender. (Doc. 94, #725–26). However, Willis's testimony at that hearing recast this claim to allege he received wrong information about a three-point offense level reduction being available even if Willis went to trial. (*Id.* at #673).

withdrawal of his guilty plea. The Court, however, concludes that none of these provide a basis for Willis to invalidate or withdraw his plea.

## A.    Willis Knowingly And Voluntarily Entered His Guilty Plea.

Because a guilty plea waives various constitutional rights, a guilty plea is valid as a matter of constitutional law only if done knowingly and voluntarily. *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) ("The standard [for determining the validity of guilty pleas] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."). Start with "knowing." Under both the Constitution and Federal Rule of Criminal Procedure 11, a plea is considered knowing when the "defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005).

Willis's problem is that, while he claims he did not knowingly enter his plea, he offers no meaningful factual foundation for that claim. Among Willis's various complaints, none cast doubt on his knowledge or understanding of his constitutional rights, the elements of the crime charged, the consequences of his plea, or the factual basis supporting it. Indeed, before accepting Willis's guilty plea, the Court thoroughly covered these issues with him. (Change of Plea Hr'g, Doc. 80, #554–72). Armed with that information, he nonetheless chose to proceed.

Willis now claims that he misunderstood *other* facts, but those alleged misunderstandings do not make his plea unknowing. For example, his erroneous belief that his expert watched all three available police body-camera videos does not make his plea unknowing, nor does any incorrect information he allegedly received from the probation office regarding his potential sentence. Indeed, as to the latter, the Court explicitly informed Willis that any probation office representation on that issue would be an estimate. (*Id.* at #475). Next, even assuming his counsel gave Willis an incorrect assessment regarding the applicability of certain offense level reductions,[7] this too will not make a plea unknowing. *See United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990). Finally, any misunderstandings he may have had concerning the *Old Chief* stipulation are irrelevant—that stipulation is a trial matter that does not bear on whether his plea was knowing. In sum, Willis knowingly entered his plea of guilty.

Turning to "voluntary," Willis claims he entered his plea involuntarily because the Court pressured him. Confusingly, his allegations on this front blend constitutional and statutory law claims. But measured against either, Willis's allegations are meritless.

---

[7] Willis never clarified what exactly he allegedly learned about the availability of the three-point offense level reduction if he in fact proceeded to trial. Even at the time he entered the plea, the government only offered a two-level reduction. And had he gone to trial, Willis would certainly not be entitled to the one-point reduction under U.S.S.G. § 3E1.1(b). That Section only applies where "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial[.]" U.S.S.G. § 3E1.1(b).

As a matter of constitutional law, a guilty plea is involuntary when it is the product of "threats, coercion or inducements made by the government or any law enforcement agencies." *United States v. Brown*, 96 F. App'x 380, 383 (6th Cir. 2004). Examples include "'actual or threatened physical harm,' 'mental coercion overbearing the will of the defendant,' or fear that makes the defendant unable rationally to weigh the decision to plead guilty." *United States v. Beason*, No. 21-5543, 2022 WL 2375728, at *2 (6th Cir. June 30, 2022) (quoting *Brady*, 397 U.S. at 750).

In his Motion and Supplemental Motion, Willis offers little to support a claim that he involuntarily entered his guilty plea under the constitutional standard. Nor at his hearing did he accuse anyone of forcing his hand by way of threats, mental coercion, or the like. Instead, he contends that the Court coerced him to plead guilty by invading plea negotiations and violating Criminal Rule 11(c). But Rule 11(c) prohibits judicial participation in plea negotiations as a statutory, not constitutional, matter. *See Alvarez v. Straub*, 21 F. App'x 281, 283 (6th Cir. 2001).

Of course, that still leaves the question of whether the Court violated the rule as a statutory matter. Rule 11(c)(1) provides that "[t]he court must not participate in [plea] discussions." The prohibition protects defendants from the inherently coercive nature of judicial participation in plea negotiations. *Alvarez*, 21 F. App'x at 283. "Under Rule 11, the judge's role is limited to acceptance or rejection of the plea agreement after a thorough review of the relevant factors; the judge should not participate in the plea bargaining process." *United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980). Participation for these purposes includes suggesting the defendant

17

accept a plea, commenting on the favorability of a plea, proposing preferred terms in an agreement, allowing negotiation in the judge's presence, or commenting on a hypothetical plea. *See In re United States*, 32 F.4th 584, 592–93 (6th Cir. 2022); *United States v. George*, 573 F. App'x 465, 471–72 (6th Cir. 2014); *see also United States v. Ushery*, 785 F.3d 210, 219–20 (6th Cir. 2015).

The Court did not participate in plea negotiations here. Indeed, Willis's counsel (who was not present at the final pretrial that converted into a plea hearing) acknowledged as much at the motion's hearing—conceding this claim appeared baseless following Willis's testimony. (Doc. 94, #725). To start, it was Willis—not the Court—who resurrected plea discussions on what was intended to be the eve of trial. And when Willis did so, the Court admonished: "I can't play any role in plea negotiations, and I don't want to play and I'm not going to play any role in plea negotiations." (Doc. 79, #453). Consistent with that, the Court did not recommend that Willis accept the plea agreement, nor did the Court comment on any of its terms. Indeed, the Court expressly disclaimed offering Willis a view on whether the agreement was favorable. (*Id.*). The Court instead instructed Willis to discuss that issue with his counsel outside the Court's presence. (*Id.*).

To support his argument now, Willis plucks out of context the Court encouraging Willis to "help me help you." (*Id.*). But context matters. When the Court said this, the Court was inquiring "what additional information" Willis needed to address his questions about how sentencing worked. (*Id.*). Willis said, "[w]ell, as far as guidelines, I'm not understanding them to the fullest," to which the Court

responded by explaining, in general terms, the Sentencing Guidelines. (*Id.* at #454–55). This is a far cry from judicial participation in plea negotiations.

Despite this, Willis now contends that the Court forced his hand. From Willis's testimony (at least so far as the Court can tell), Willis seems to have believed he would receive 400 months if convicted after trial and that the Court somehow hinted it would sentence him more favorably if he pled guilty. (Doc. 94, #673–74). Based on this erroneous understanding, Willis thought he must admit guilt to be "helped." (*Id.* at #689). Where this belief originated, the Court cannot say. It does not appear in the record. On the contrary, the record reflects just the opposite—the Court specifically advised Willis that it may "impose the same penalty as though [Willis] pled not guilty, stood trial, and were convicted by a jury." (Doc. 80, #558–59). In short, nothing the Court did made Willis's plea involuntary.

## B. Willis Has Failed To Show He Is Entitled To Withdraw His Plea Under Federal Rule of Criminal Procedure 11(d).

Even after entering a valid plea of guilty, a defendant may still seek to withdraw it before sentencing if they "show a fair and just reason for requesting the withdrawal" under Federal Rule of Criminal Procedure 11(d)(2)(B). But the defendant bears the burden of showing such a reason. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007). Willis fails to carry that burden here.

According to the Sixth Circuit, "[t]he purpose of Rule 11(d) is to allow a 'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *Id.*

(quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)). Courts

consider the following seven factors when deciding whether a defendant articulates a

"fair and just reason" for their withdrawal:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* (quoting *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998). This list is non-

exhaustive, and no one factor controls. *United States v. Bashara*, 27 F.3d 1174, 1181

(6th Cir. 1994). That said, "'[t]he government is not required to establish prejudice'

under the seventh factor 'unless and until the defendant advances and establishes a

fair and just reason for allowing the withdrawal' under the first six." *United States v.*

*Bell*, 795 F. App'x 398, 402 (6th Cir. 2019) (quoting *United States v. Spencer*, 836 F.2d

236, 240 (6th Cir. 1987)).

Willis has failed to provide a fair and just reason for now seeking to withdraw

his guilty plea. Most factors (but admittedly not all) weigh against him.

Start with those that count in Willis's favor. Under the first factor, Willis

claims that he informed his prior counsel that he wished to withdraw eight days after

pleading guilty. Granted, the Court did not learn of this intention until October 5,

2021 (48 days later), and his counsel did not actually move to withdraw the plea until

October 25, 2021 (68 days later). (Doc. 75; Doc. 82, #597). But the Court credits his

claim that he first attempted to withdraw within eight days, and so this factor favors

Willis. And as to the second factor, again crediting Willis, the Court will assume any delay resulted from his prior counsel's attempts to withdraw from representation. This strikes the Court as a valid justification for delay. So this factor, too, leans towards Willis.

Unfortunately for Willis, that's all he has going for him. The factors that follow weigh heavily against him. As to the third, Willis has not maintained his factual innocence. To the contrary, before accepting his guilty plea, the Court asked Willis whether he possessed drugs and a firearm at the time of his arrest, and he responded yes. (Doc. 80, #567–72). The government also read a lengthy and detailed statement of facts it intended to prove at trial. Afterward, the Court asked Willis if those facts were accurate. (*Id.*). Showing he had paid attention to the factual rendition, Willis singled out the assertion that he had "reached for his waistband" upon seeing the police, protesting "I know better than to be" doing that. (*Id.* at #571). Acknowledging this, the Court then asked:

> THE COURT: Very good. So, Mr. Willis, beyond your disagreement with the fact that you were reaching towards your waistband, is there anything else in [the government's] recitation of the facts with which you disagree?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. So everything else [the government] said is correct, is that right, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It's not in any way incorrect; is that right?
>
> THE DEFENDANT: No, sir.

(*Id.* at #572). In clarifying the one aspect of the facts he disputed, Willis illuminated his grasp of the factual recitation. He admitted those facts in full (other than the

21

reaching-for-the-waistband allegation). *See United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) ("Statements of guilt under oath at a plea hearing support the district judge's decision not to permit withdrawal."); *United States v. Watkins*, 815 F. App'x 22, 25 (6th Cir. 2020) ("Absent extraordinary circumstances, when the Rule 11 procedures are 'fully adequate,' we hold a defendant pleading guilty to the statements he makes at his plea hearing.").

Even Willis's renewed protest of innocence is suspect. When, at the hearing on the motion to withdraw, the government raised his earlier admissions, Willis repeatedly argued that he was "not guilty" of the crimes charged. (Doc. 94, #715–16). But he refused to offer any factual foundation for this assertion. Rather, his concern seemed to be that he had fresh doubt about whether the government could successfully prove its case (for example, due to the expert evidence). But questioning the legal merits of the government's case differs from asserting factual innocence. *See United States v. Williams*, 852 F. App'x 992, 996–97 (6th Cir. 2021) *cert. denied*, 142 S. Ct. 266 (2021). To be sure, after further cross-examination, Willis finally asserted factual innocence by unequivocally claiming that he had no gun or drugs on him. (Doc. 94, #716). Yet even then, he did not explain the change in his rendition of the facts from his plea colloquy. Indeed, at the hearing, he admitted to being high on drugs at the time of arrest yet also claimed with certainty that he did not have drugs on his person. (*Id.* at #722–23). Compared to his clear (and careful) admission of guilt during the plea colloquy, the Court finds cause to doubt Willis's newfound and inconsistent assertions of innocence. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)

("[W]here the court has scrupulously followed the required procedure, 'the defendant is bound by his statements in response to that court's inquiry.'") (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976)).

Turning to the fourth factor, Willis showed his presence of mind and understanding of the proceedings when changing his plea. As discussed, the Court carefully confirmed that Willis fully understood his "constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis" for the crime charged. *Webb*, 403 F.3d at 378–79. This was no "hastily entered plea made with unsure heart and confused mind." *Dixon*, 479 F.3d at 436. In pleading guilty, Willis understood what he was doing and did it anyway. *See Watkins*, 815 F. App'x at 25.

Rounding out factors five, six, and seven—none support Willis's Motion. Although he bears the burden, Willis provides virtually no discussion about his nature or background (factor five) to support withdrawing his guilty plea. The Court cannot infer that this factor favors him without an affirmative showing. And Willis has significant criminal justice experience and so understands the implications of pleading guilty (factor six). While he argues he has no *federal* criminal experience, (Doc. 75, #440), that makes no difference. *See United States v. Ward*, 356 F. App'x 806, 810 (6th Cir. 2009) (crediting state-level criminal justice experience). Finally, the seventh factor does not come into play because Willis has failed to meet his initial burden under the first six. *Bell*, 795 F. App'x at 402.

Taking these factors together, the Court concludes that Willis has failed to show he is entitled to withdraw his guilty plea. Even crediting that he attempted to withdraw the plea shortly after entering it, the other factors weigh strongly against him. And if anything, his hearing testimony confirms that his attempt to withdraw is a tactical decision made after realizing his better course may have been testing the government's case at trial. *See Dixon*, 479 F.3d at 436. Accordingly, Willis may not withdraw his guilty plea.

## C. Willis's Inability To Attend Pre-Trial Conferences Does Not Provide Him A Basis To Withdraw His Guilty Plea.

Finally and briefly, Willis may not withdraw his guilty plea by claiming he did not have notice of, and so could not attend, allegedly "critical stages" of his criminal proceedings. At his hearing, Willis argued that his Fifth Amendment right to be present during critical stages and his Sixth Amendment right to his choice of counsel were violated when he did not learn of hearings taking place outside his presence. (Doc. 94, #670–71). The Court need not dwell long here; neither basis supports Willis's attempt to undo his guilty plea.

Under the *Tollett* rule, "a guilty plea represents a break in the chain of events which has preceded it," and a defendant who pleads guilty waives all "claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001). Here, Willis fails to connect these supposed Fifth and Sixth Amendment violations, even assuming they were violations, to his guilty plea. *See Hatcher v. United States*, 2:19-cv-37, 2022 WL 394692, at *4–5 (E.D.

Tenn. Feb. 8, 2022) (refusing to invalidate a knowing and voluntary guilty plea on the vague grounds the plea was "blighted with the specter of unconstitutional conduct"). Or, more plainly, Willis has not shown that his lack of physical presence at a pre-trial conference call *caused* him to plead guilty. Therefore, because any alleged prior constitutional violations did not prompt the guilty plea, Willis has waived them. The Court declines to undo Willis's plea on this basis.

## CONCLUSION

Taken together, the Court finds the circumstances weigh against granting Willis's Motion to Withdraw. Accordingly, the Court **DENIES** Willis's Motion to Withdraw Guilty Plea (Doc. 75) and **DENIES** Willis's Supplemental Motion to Withdraw Guilty Plea (Doc. 92). As there are no further matters to be decided by the Court, this case shall proceed to sentencing. The Court **DIRECTS** the probation office to prepare a presentence investigation report in accordance with local Criminal Rule 32.1.

**SO ORDERED.**

January 27, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

25